IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| THE STAYWELL COMPANY, a Delaware company, <br><br> Plaintiff, <br><br> v. <br><br> WELLCARE HEALTH PLANS, INC., a Delaware company, <br><br> Defendants. | § <br> § <br> § <br> § <br> § CASE NO. _____ <br> § <br> § <br> § <br> § <br> § |

## PLAINTIFF THE STAYWELL COMPANY'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL
## (INJUNCTIVE RELIEF SOUGHT)

Plaintiff, The StayWell Company ("StayWell"), hereby sues WellCare Health Plans, Inc., and alleges as follows:

### I.   PARTIES

1. Plaintiff StayWell is a Delaware corporation with its corporate headquarters located at 780 Township Line Road in Yardley, PA 19067.

2. Defendant WellCare Health Plans, Inc. ("WellCare") is a Delaware corporation with its principal place of business at 8735 Henderson Road in Tampa, Florida 33634. WellCare has registered to do business and does business in the State of Florida.

## II. JURISDICTION AND VENUE

3. This court has jurisdiction over the subject matter under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has pendent jurisdiction of claims arising under state law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

4. Defendant regularly and systematically conducts business in Florida by advertising, soliciting, and selling its products and/or services to customers in this District. Additionally, Defendant's principal place of business is located within this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is a corporation and is subject to personal jurisdiction in this District, and because a substantial portion of the acts and omissions complained of herein occurred in this District.

### A.  The STAYWELL Mark

6. StayWell is a provider of comprehensive health management programs and services that help organizations maximize business results by improving employee health and productivity (the "StayWell Services"). The StayWell Services provide consumers with information and education to empower their health decisions and improve the quality of their lives, and include versatile, results-oriented health management strategies designed to improve the lives of individuals across the health continuum. StayWell's primary focus is business-to-business relationships whereby employers, health insurers, hospitals, pharmacies and physicians are provided the functional utility of the StayWell Services, that enables them to provide the product

and/or services of StayWell to their constituents. The StayWell Services have achieved much acclaim and notoriety because of the benefits they have provided to population health management.

7. StayWell owns United States Service Mark Registration No. 1,189,585 for the proprietary designation "STAYWELL" in connection with the StayWell Services (the "STAYWELL mark"). The STAYWELL mark was registered on February 9, 1982, and has been in continuous and broad-based use in interstate commerce since 1976. Because of this continued use and pursuant to 15 U.S.C. § 1065, the STAYWELL mark registration has become incontestable. A true and correct copy of Registration No. 1,189,585 is attached as Exhibit A. StayWell has also received other registrations that incorporate the STAYWELL mark: STAYWELL INFORMATION THERAPY (Reg. No. 3,197,695); STAYWELL PRODUCTIONS (Reg. No. 3,168,371); STAYWELL SOLUTIONS (Reg. Nos. 3,104,648, 3,104,647, 3,174,746, 3,121,420); STAYWELL'S NEXTSTEPS (Reg. No. 2,747,675); and STAYWELL ONLINE (Reg. No. 2,366,379) (the "StayWell Family" of marks).

8. StayWell is the exclusive owner of the STAYWELL Mark and the StayWell Family of marks.

9. StayWell has engaged in extensive promotion of its services using the STAYWELL mark, and its customers, distributors, and others have come to associate this mark with the source or origin of the StayWell Services. For over 30 years, StayWell has expended significant resources on advertising and promoting its health management programs and services provided under the STAYWELL mark.

10.    StayWell uses numerous avenues of marketing to promote its services. Among these avenues are an interactive website, direct mailings, trade shows, trade publications, brochures and pamphlets, telemarketing, and personal sales visits. StayWell uses the STAYWELL mark throughout its business to promote its health educational and population health management services. Because of this, consumer recognition, both at the business level and the individual consumer level, of the STAYWELL mark is extremely high. These consumers have come to expect the highest quality from any product or service that bears the STAYWELL mark.

11.    StayWell maintains a website that provides current and potential customers the ability to obtain information concerning the StayWell Services. StayWell uses the STAYWELL mark throughout its Internet website to promote its StayWell Services.

### B.    WellCare's Infringement and Unfair Competition

12.    WellCare is also in the business of providing health management programs and services to its customers. WellCare purports to provide healthcare services in the nature of health maintenance, dental programs, vision programs, prescription drug programs, and health maintenance organizations for beneficiaries of government-sponsored healthcare programs.

13.    As part of its services, WellCare advertises, offers for sale and sells their services using the designation "Staywell." Wellcare uses the term "Staywell" to refer to and promote a class of benefits packages for government-sponsored healthcare programs,

such as Medicaid. This includes using the term "Staywell" on their website www.wellcare.com to advertise their Medicaid services "Staywell" and "Staywell Kids".

14. WellCare began advertising, offering for sale, and selling their services using the term "Staywell" long after StayWell adopted and began using the STAYWELL mark. Furthermore, WellCare's use of the STAYWELL mark has been without StayWell's consent and/or authorization.

15. WellCare's use of the term "Staywell" began at a time when WellCare had actual and/or constructive notice of StayWell's exclusive right to use the STAYWELL mark. Despite such actual and/or constructive notice of StayWell's exclusive right in and to the use of the STAYWELL mark, WellCare has intentionally infringed upon such mark by advertising and otherwise using the term "Staywell" in conjunction with the sale and promotion of their healthcare services.

16. The natural and probable consequence of WellCare's use of the term "Staywell" has been and will continue to be that the public and consumers will likely be confused, misled, and deceived into believing that WellCare's services are in some way sponsored or affiliated with StayWell. This confusion could lead, and has led, consumers to seek out StayWell when attempting to deal with WellCare issues. Such confusion is a direct result of WellCare's infringing use of the STAYWELL mark and will result in an injury to StayWell's reputation and the goodwill associated with the STAYWELL mark.

17. Such injury to StayWell's reputation and goodwill is certain to occur given WellCare's current legal issues. Upon information and belief, WellCare is currently being investigated by both the federal government and the State of Florida for Medicaid fraud.

These serious allegations and the publicity derived from the investigations cast a negative image upon WellCare and the services it offers. Part of those services is WellCare's "Staywell" Medicaid service. Because of this, consumers may be mistakenly led to believe that StayWell is in some way associated with WellCare's allegedly fraudulent services. Such confusion will inevitably lead to harm to StayWell's reputation and damage the goodwill associated with the STAYWELL mark. It is clear that unless WellCare is restrained from further use of the term "Staywell," StayWell will continue to incur damages and will suffer irreparable harm.

18. WellCare's infringement upon the STAYWELL mark is likely to cause StayWell to lose control over its own reputation and goodwill, as well as other immeasurable damages. For the harm and loss suffered by StayWell, and for the harm and loss that will continue but for intervention of this Court, StayWell has no adequate remedy at law. Unless WellCare is enjoined from further infringement and unfair competition, StayWell will suffer irreparable harm because the damages sustained will be immeasurable, unpredictable, and unending. Moreover, the Lanham Act and applicable state law specifically provide for injunctive relief to prevent further infringement of the STAYWELL mark.

19. All conditions precedent to this action have occurred or been waived.

### III. CAUSES OF ACTION

**A. Count I: Federal Trademark Infringement and Unfair Competition**

20. StayWell repeats and realleges paragraphs 1 through 19 above, as though fully set forth herein.

21. The above-referenced actions have caused and are likely to continue to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of StayWell with WellCare, or as to the origin, sponsorship or approval of WellCare's Services by StayWell in violation of 15 U.S.C. §§ 1114 and 1125. As set forth above, such wrongful acts and unfair competition by WellCare have caused, and are likely to continue to cause, StayWell to incur substantial damages. StayWell seeks recovery from WellCare of all amounts it is entitled to under 15 U.S.C. § 1117(a), including without limitation: (1) WellCare's profits from the sale of each service marketed, advertised, sold or rendered using the STAYWELL mark; (2) all damages sustained by StayWell; (3) the costs of the action; and (4) an additional amount that the Court considers just. In addition, StayWell seeks permanent injunctive relief prohibiting WellCare's use of the term "Staywell."

**B.   Count II: Federal Dilution**

22. StayWell repeats and realleges paragraphs 1 through 21 above, as though fully set forth herein.

23. The acts of WellCare complained of herein dilute or cause dilution of the distinctive quality of the STAYWELL mark, in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

24. WellCare willfully intended to trade on the reputation of StayWell and to dilute or cause dilution of the STAYWELL mark. StayWell is therefore entitled to the damages resulting from WellCare's violation of the Federal Trademark Dilution Act, as well as permanent injunctive relief prohibiting WellCare's use of the term "Staywell."

### C. Count III: Injury To Business Reputation And Dilution Under Florida Law

25. StayWell repeats and realleges paragraphs 1 through 24 above, as though fully set forth herein.

26. The foregoing acts of WellCare have resulted in dilution of the distinctive quality of the STAYWELL mark and have destroyed and continue to destroy the goodwill and reputation established by StayWell in connection with the STAYWELL mark, thereby causing StayWell irreparable harm.

27. The foregoing acts of WellCare accordingly constitute dilution of the distinctive quality of the STAYWELL mark, in violation of Florida's Dilution Statute, Fla. Stat. § 495.151, and Florida common law.

28. As such, StayWell is entitled to a permanent injunction prohibiting WellCare's use of the term "Staywell", WellCare's profits derived from WellCare's wrongful use of the STAYWELL mark as per Fla. Stat. § 495.141

### D. Count IV: Common Law Trademark Infringement

29. StayWell repeats and realleges paragraphs 1 through 28 above, as though fully set forth herein.

30. The acts of WellCare complained of herein constitute trademark infringement in violation of the common law of the State of Florida and the common law of other States in which WellCare is conducting business.

### E. Count V: Attorneys' Fees

31. StayWell repeats and realleges paragraphs 1 through 30 above, as though fully set forth herein.

32. Due to WellCare's wrongful conduct as alleged herein, StayWell has retained the undersigned law firms to represent it and prosecute this action on its behalf, and has agreed to pay its reasonable attorneys' fees and expenses for prosecuting this action. Because WellCare's actions have been willful and deliberate, this is an exceptional case for which attorneys' fees are recoverable under 15 U.S.C. § 1117(a) and/or applicable state law, pursuant to which StayWell requests an award of its attorneys' fees, costs, and expenses incurred in prosecuting this lawsuit.

### IV.   JURY DEMAND

33. StayWell hereby requests a jury trial on all issues and claims so triable.

### V.   REQUEST FOR RELIEF

34. StayWell respectfully requests that StayWell be awarded the following relief from WellCare:

(a) That WellCare and all persons acting in concert with it be permanently enjoined from: (1) advertising, marketing, selling or rendering any product or service under or otherwise using or continuing to use the term "Staywell" or any other term that is confusingly similar to the STAYWELL mark, (2) representing to any other person or entity that they have authority to use the term "Staywell" or any term which is confusingly similar to the STAYWELL mark, and (3) representing to any other person or entity that WellCare or their products and services are in any manner associated with, connected to, related to, sponsored by, affiliated with, endorsed by, approved by or recommended by StayWell;

(b) That WellCare be required to report its compliance to StayWell;

(c) That StayWell receive and recover from WellCare all of: (1) WellCare's profits from each product and service marketed, advertised or sold using the term "Staywell"; (2) all damages sustained by StayWell; (3) costs of court; (4) statutory damages

allowed by the Lanham Act; and (5) any additional amount that the Court determines to be just;

(d) That StayWell receive and recover it's actual damages from WellCare under applicable state statutory and common law;

(e) That the Court order the WellCare to provide StayWell with the identity of each of its customers, including phone numbers and addresses;

(f) That WellCare be ordered to pay StayWell its reasonable costs, expenses, and attorneys' fees incurred in prosecuting this action, including any appeal;

(g) That StayWell be awarded pre and post-judgment interest to the maximum extent allowed by law; and

(h) That StayWell be awarded such other and further relief to which it may be justly entitled.

Date: April 9, 2008

By: *[signature]*
G. Wrede Kirkpatrick
Florida Bar No: 984116
**CONWELL KIRKPATRICK, P.A.**
2701 North Rocky Point Drive, Suite 1200
Tampa, FL 33607
(813) 282-8000 (Telephone)
(813) 282-8800 (Facsimile)
wkirkpatrick@csklawfirm.com

Todd E. Landis
Texas State Bar No. 24030226
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
(214) 969-2800 (Telephone)
(214) 969-4343 (Facsimile)
tlandis@akingump.com

Patrick T. Farley
Texas State Bar No. 24036548
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
(214) 969-2800 (Telephone)
(214) 969-4343 (Facsimile)
pfarley@akingump.com

**ATTORNEYS FOR PLAINTIFF THE STAYWELL COMPANY**

# EXHIBIT A

Int. Cl.: 41

Prior U.S. Cl.: 107

**United States Patent and Trademark Office**

Reg. No. 1,189,585
Registered Feb. 9, 1982

## SERVICE MARK
Principal Register

### STAYWELL

Control Data Corporation (Delaware corporation)
8100 - 34th Ave., S.
Minneapolis, Minn. 55440

For: EDUCATION SERVICES IN PERSONAL HEALTH, LIFE-STYLE AFFECTS ON PERSONAL HEALTH AND LIFE-STYLE ADJUSTMENTS TO BENEFIT PERSONAL HEALTH, in CLASS 41 (U.S. Cl. 107).
First use 1976; in commerce 1976.

Ser. No. 265,438, filed Jun. 9, 1980.

DAVID SOROKA, Primary Examiner